

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-14-2006

# Amoh v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3926

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Amoh v. Atty Gen USA" (2006). *2006 Decisions*. Paper 211.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/211

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-3926

———————

SAMUEL W. AMOH,
                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                    Respondent

———————

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A96 265-643
Immigration Judge: Henry S. Dogin

———————

Submitted Under Third Circuit LAR 34.1(a)
November 6, 2006

———————

Before: SCIRICA, Chief Judge, BARRY and ALDISERT, Circuit Judges

( Filed: November 14, 2006 )

———————

OPINION

———————

BARRY, Circuit Judge

Petitioner, Samuel W. Amoh, a native of Ghana and a citizen of Liberia, petitions

for review of an order of the Board of Immigration Appeals ("BIA") affirming the

Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition.

**I.**

Amoh entered the United States on October 9, 2002 as a visitor for pleasure and was authorized to remain in the country until April 9, 2003. Having failed to leave the country by that date, he was served by the Department of Homeland Security with a Notice to Appear, which alleged that he was removable as a non-immigrant who remained in the United States for a period of time longer than permitted, in violation of section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B). He filed an application for asylum, withholding of removal, and protection under CAT, and, at a November 4, 2003 hearing, conceded the charge while reasserting his various claims for relief.

A hearing on Amoh's application was held on February 20, 2004. Amoh testified that he was born in Ghana and later relocated to, and was naturalized in, Liberia.[1] Amoh,

---

[1] The original Notice to Appear charged that Amoh is a native and citizen of Ghana. At the November 4, 2003 hearing, Amoh asked that the Notice be amended to reflect that he is a native and citizen of Liberia. The IJ granted this request. At the February 20, 2004 hearing, however, the IJ noted that Amoh was born in Ghana and had obtained a passport there, and changed the Notice to reflect that Amoh was a native of Ghana and a citizen of Liberia. All parties agree that Amoh was naturalized in Liberia in 1968. No evidence was presented regarding Amoh's brief stay in Ghana, and no argument made that his stay in Ghana has any legal significance for purposes of this application.

his wife, and his wife's family, the latter two belonging to the Krahn ethnic group, were involved in the political party supporting Samuel Doe. In 1989, civil war broke out, as rebels supporting Charles Taylor entered the country via the Ivory Coast.

Following the outbreak of civil war, Amoh began to experience trouble with rebel "lawlessness." (A.R. 206.) In June 1990, rebels entered the campus of the National Youth Center, where Amoh taught classes in metal construction and masonry. The rebels tied up Amoh along with seven other staff members, broke into a vault on the campus, stole money, and eventually killed the school's accountant and four other staff members. Amoh was not harmed.

Seeking to avoid the erupting violence, Amoh took his family and fled to Kun-Town, a village deep in the Liberian forest. In Kun-Town, rebels engaged in a seemingly relentless onslaught on "[e]verybody that they [met] there" (A.R. 206), as they stole food and raped women and children. Amoh's wife was raped and the rebels forced Amoh to stand alongside and sing. Following this incident, the rebels learned of Amoh's association with Samuel Doe's government. Frightened, Amoh and his family fled to the village of Shelo, in the Foya area bordering Guinea. From 1992–2001, the family remained in Shelo and endured frequent harassment from the rebels.

In 2001, the family headed across the border to Guinea. Shortly thereafter, Amoh's wife and their children relocated to a refugee camp in Ghana, where they remain to this day. Amoh did not join them, but, rather, returned to Foya. There, further rebel

3

violence—this time by rebels looking to oust Charles Taylor—plagued Amoh. Amoh left in March 2002. He obtained a passport in Ghana and traveled to the United States.

In addition to his experiences with the rebels, Amoh testified that his wife's uncle, who was a tribunal chairman under Samuel Doe, was executed and that his mother and brother were also killed.[2]

Following the hearing, the IJ issued an oral decision denying Amoh's application but granting voluntary departure, or, on his failure to so depart, ordering him to be removed to Liberia. The IJ concluded that Amoh had not carried his burden of showing that the acts of persecution he allegedly suffered were related in any way to the five enumerated grounds provided in the INA for qualification as a "refugee." Rather, according to the IJ, Amoh was the victim of "what has happened to most people in Liberia" caught in the midst of "a horrible, tragic civil war," i.e. "general violence at the hands of the rebels." (A.R. 120–21.) In addition, the IJ determined that Amoh, despite an open line of communication with his family in Ghana, failed to offer corroboration supporting his claims that various family members were killed on account of their political opinions. By order dated July 20, 2005, the BIA affirmed the IJ's decision without opinion.

---

[2] Amoh testified that his father-in-law was arrested with his wife's uncle, but he did not testify as to his father-in-law's fate. (A.R. 155–56.) In his asylum application, Amoh indicated that he was, in fact, killed.

**II.**

To qualify for the discretionary relief of asylum, an applicant must establish that he is a "refugee," as that term is defined in section 101(a)(42) of the INA, 8 U.S.C. § 1101(a)(42)(A). In order to meet this definition, the applicant must show that he or she is "unable or unwilling to return to . . . [his] country [of nationality] because of persecution or a well-founded fear of persecution," id., and has "the burden of showing that the persecution was on account of the applicant's race, religion, nationality, membership in a particular social group, or political opinion," Lukwago v. Ashcroft, 329 F.3d 157, 170 (3d Cir. 2003). In order for the persecution to qualify under the statute, "the persecutor must be motivated, at least in part, by one of the enumerated grounds." Lukwago, 329 F.3d at 170.

To be eligible for withholding of removal, an applicant must "demonstrate[] a 'clear probability' that, upon return to his or her home country, his or her 'life or freedom would be threatened' on account of race, religion, nationality, membership in a particular social group, or political opinion." Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004).

In order to receive protection under CAT, the applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person. Id. § 208.18(a)(1).

5

Where, as here, the BIA affirms a decision of the IJ without opinion, we review the IJ's decision. Chen v. Gonzales, 434 F.3d 212, 216 (3d Cir. 2005). Review is conducted under the substantial evidence standard, which requires us to examine the IJ's findings to determine whether they are "supported by evidence that a reasonable mind would find adequate." Dia v. Ashcroft, 353 F.3d 228, 247–49 (3d Cir. 2003) (en banc). We may reverse a finding of the IJ only when "no reasonable fact finder could make that finding on the administrative record." Id. at 249. With respect to an IJ's finding regarding "the availability of corroborating evidence," the REAL ID Act of 2005 dictates that we not reverse that finding unless "a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4)(D).

**III.**

Amoh makes two principal arguments. First, he argues that the streamlining regulations promulgated by the Department of Justice, which allow, among other things, review of an IJ's decision by a single member of the BIA and affirmance without opinion, violate due process. See Pet.'s Br. at 16–27; see e.g., 8 C.F.R. § 1003.1(e). Second, Amoh contends that the IJ's findings were not supported by substantial evidence. See Pet.'s Br. at 27–34. We disagree.

First, Amoh's due process argument is frivolous. We held, almost three years ago, that the very procedures he contests do not run afoul of due process. Dia v. Ashcroft, 353 F.3d 228 (3d Cir. 2003) (en banc). In Dia, we were faced with the same procedural

6

posture present here—affirmance without opinion of an IJ's decision by a single member of the BIA. Id. at 247. Given that " 'an alien has no constitutional right to any administrative appeal at all,' " id. at 242 (quoting Albathani v. INS, 318 F.3d 365, 376 (1st Cir. 2003)), we had no trouble concluding that review "done by one member of the BIA" whose ruling was "not accompanied by a fully reasoned BIA decision" was not "constitutionally 'unfair,' " id. at 243–44. In addition, far from having to guess at the reasoning of the BIA, we determined that the IJ's decision provided the agency's reasoning for purposes of our review. Id. at 240–44.

Amoh's attack on the IJ's findings is similarly unavailing. The IJ concluded that Amoh had not shown that he was persecuted on account of one of the five enumerated grounds provided in the INA. According to the IJ, "Whatever harm may [have] occur[red] to the wife or any harassment that he received occurred because he was a Liberian citizen[,] that he was not a rebel, and they were torturing, harming, and raping anybody." (A.R. 118.)

This conclusion has abundant support in the record. For example, Amoh testified that when rebels invaded the National Youth Center they took money and killed the accountant but they did not harm him. According to Amoh, they wanted "the money." (A.R. 163.) Amoh's wife was raped in Kun-Town, but, tellingly, he testified that the perpetrators did not find out about his association with Samuel Doe's government until after that incident occurred. Similarly, Amoh testified that the various other forms of

7

harassment he suffered happened to everybody. Quite simply, Amoh provided no evidence, much less evidence sufficient to reverse the IJ's decision, that any abuse he suffered was motivated by his status with the government, his wife's ethnic background, or any other ground enumerated in the INA.

Similarly, the IJ's conclusion that Amoh failed to offer corroboration regarding the alleged persecution suffered by his family is supported by substantial evidence. The IJ identified numerous areas where corroborating evidence would be available, such as documents regarding the lives and deaths of Amoh's mother, brother, father-in-law, and wife's uncle. In addition, the IJ correctly noted that Amoh has an open line of communication with his wife in Ghana and that there was no reasonable explanation for Amoh's failure to provide such evidence.

Finally, the IJ's conclusions that Amoh has not shown a well-founded fear of future persecution or that it is more likely than not he will be tortured upon his return to Liberia are supported by substantial evidence.[3]

**IV.**

For the foregoing reasons, we will deny the petition for review.

---

[3] Having failed to establish a well-founded fear of persecution for purposes of eligibility for asylum, Amoh was, by definition, unable to establish the clear probability of harm required to qualify for withholding of removal. See Chen, 376 F.3d at 223.